449 P.2d 239

**SALT LAKE CITY FIRE FIGHTERS LO-
CAL 1645, etc., Plaintiffs
and Appellants,**

v.

**SALT LAKE CITY, a municipal corporation,
Defendant and Respondent.**

No. 11351.

Supreme Court of Utah.

Jan. 3, 1969.

Adam M. Duncan, Salt Lake City, for plaintiffs and appellants.

Paul G. Grant, Asst. City Atty., Salt Lake City, for defendant and respondent.

HENRIOD, Justice:

Appeal from a dismissal of a declaratory judgment action. Affirmed. No costs awarded.

Plaintiffs, appointed officers and employees, urge that certain city ordinances having to do with 1) their residence within the city and 2) prohibiting certain political activities while working for the City, are (a) not within the City's express or im-

**116**

plied powers [1] and (b) are offensive to their constitutional rights.[2]

As to (a) above, plaintiffs indulge an ipse dixit by saying that the City "evidently claims to derive statutory power to adopt the residence ordinance from Sec. 10-6-6." There is nothing in the City's brief that makes any such contention and 10-6-6 is not even cited therein. The City *does* suggest that with respect to residency requirements, the matter is not unlike that of a private employer. The City suggests that such power is fairly implied in the broad powers granted to cities, with which we are constrained to agree; and it refers to Title 10-6-15, U.C.A. 1953, where the Commission "may make other rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city." We think Stevenson v. Salt Lake City Corp.[3] having

to do with gambling devices, is not apropos here, except that it confirms the concept of fairly implied powers,—which we think is the case here.

It is to be noted that the subject ordinance [4] deals principally with (a) prospective employment, and (b) a two-year granddaddy or phase-out provision requiring those employees residing outside a 15-mile radius of the City hall to become residents *within the City.* There are some statements in counsel's argument and brief that might suggest that moving from outside the radius to a place inside the radius would satisfy the ordinance and would produce a result where residents of adjacent cities still could be employed within the City. This is not the case. Parts of the ordinance pertinent here are abstracted below.[5] It is obvious that the purpose of the ordinance is to make uniform the residence requirements of all City employees.

1. Title 10-6-6, Utah Code Annotated 1953: "Eligibility of officers.—All elective officers of cities and of towns shall be chosen by the qualified voters of their respective municipalities. No person shall be eligible to any elective office who is not a qualified elector of the city or town, nor shall any person be eligible to any office who is a defaulter to the corporation. *The governing body of a municipality may prescibe by ordinance that any or all appointive officers be qualified electors of the municipality.*" (Emphasis added.)
2. Art. I, Secs. 1, 7, 18, 22 and 24, Utah Constitution.
3. 7 Utah 2d 28, 317 P.2d 597 (1957).

4. Sec. 25-1-7, Revised Ordinances of Salt Lake City 1965.
5. "Sec. 25-1-7. Residency within city required of all appointive officers and employees. (a) Except as hereinafter provided; every appointive officer and employee of Salt Lake City must be a resident at the time of his appointment and must continue a resident of the city while employed by the city. (b) Appointive officers and employees residing outside a fifteen mile radius from Washington Square at the effective date of this ordinance shall, within two years thereafter, establish residency *within Salt Lake City.*" See Rhyne, Municipal Law, Sec. 8-4, p. 122 et seq.

We have difficulty in concluding other than that any employer, including a city, should be able to draw from a labor pool those who live within a reasonable distance from work, or, if you please, within the city limits. This not only for the city's convenience and economical operation, but conceivably to have those whom it helps clothe and feed participate in and contribute support and taxes for its benefit,—not for that of cities elsewhere.

It is conceded that there will be cases of hardship and inconvenience for some in order to continue their employment with the City, which is regrettable, but we cannot subscribe to the theory of counsel that place of residence is a God-given, constitutional right, determinable and enforceable by an employee against his employer who offers and gives the employee his job, unless such right contractually is protected.

 As to the urgence that government cannot prevent its employees from engaging in political activities, we agree, unless legislation prohibits it in certain areas which, in the nature of things, requires that such activity shall not inure to the detriment of governmental functioning or well-being. The three ordinances attacked here as being unconstitutional are concerned with the City Police, Fire and Health Departments (Secs. 30–1–10, 14–1–5 and 17–3–5, Rev.Ord.S.L.City 1965), under the classified civil service. They have to do with certain restricted political activity. Typical is 30–1–10.[6]

These ordinances are not unlike the federal Hatch Act which has been held constitutional.[7]

Counsel for plaintiffs urge an examination of Bagley v. Washington Township Hosp. Dist.,[8] which we have done. The case is dissimilar factually and not akin to the civil service ordinances in the instant case. Counsel simply says that basically, Bagley's thrust is that "only a 'compelling' public interest can justify the imposition of restraints upon the political activities of public employees." Counsel has not stated, even in part, the facts of that protracted case. Nor can one find therein any attempt to reverse a Hatch Act case,—nor could the court, had it desired. We think several of the other cases cited have similar infirmities as applied to the facts of this case. Attention is called to

6. "Sec. 30–1–10. Political activity. No person of the classified civil service of the police department shall use his official position or of any person, nor be a member or delegate or alternate to any political convention, nor serve as a member of any committee of any political party, or take any active part in the management of any political campaign, nor solicit, collect, or receive any assessment, subscription, contribution or dues intended or used for any political purpose whatsoever."

7. United Fed. Wkrs. of America v. Mitchell, 56 F.Supp. 621 (D.C.1944).

8. 65 Cal.2d 499, 55 Cal.Rptr. 401, 421 P. 2d 409 (1966).

163 A.L.R. 1363 for cases involving political activities of employees.

CROCKETT, C. J., and CALLISTER, TUCKETT, and ELLETT, JJ., concur.