649 So.2d 951 (1995)
The POLICE ASSOCIATION OF NEW ORLEANS; Ronald J. Cannatella; Frank Vacarella; and Mike Conn, Individually and on Behalf of all Officers and Employees of the City of New Orleans
v.
The CITY OF NEW ORLEANS, a Louisiana Municipality.
NEW ORLEANS FIREFIGHTERS ASSOCIATION LOCAL 632, et al.
v.
CITY OF NEW ORLEANS.
No. 94-OC-1078.
Supreme Court of Louisiana.
January 17, 1995.
*955 Avis M. Russell, Kimberly A. Theriot, Bruce E. Naccari, and Jesse J. Marks, New Orleans, for applicant.
Frank DeSalvo, Jeffery M. Lynch, New Orleans, and Louis Robein, Jr., Robein, Urann & Lurye, Metairie, for respondent.
HALL, Justice.[*]
In this case, under our appellate jurisdiction, we determine the constitutionality of the City of New Orleans employee domicile ordinance, Municipal Ordinance 15298, as amended by Municipal Ordinance *956 15420. The trial court found the ordinance, as amended, to be constitutional. The court of appeal reversed, finding the ordinance, as amended, unconstitutional as violating Article 10, Sections 7 and 10, Article 6, Sections 5(E) and 9, and the equal protection and due process guarantees of Article 1, Sections 2 and 3 of the Louisiana constitution. Police Ass'n of New Orleans v. City of New Orleans, 93-1279, 93-2057 (La.App. 4th Cir. 3/29/94), 635 So.2d 380. This court granted the City's writ application seeking review and docketed the case as an appeal.[1] 94-1078 (La. 5/13/94), 637 So.2d 1059. Because we find that parts of the grandfather clause of the ordinance violate the equal protection clause of the Louisiana constitution, we strike those parts of the ordinance as unconstitutional. But finding those provisions severable and the ordinance otherwise valid, we uphold the validity of the balance of the ordinance, and amend the court of appeal judgment accordingly.

I.
In 1973, the New Orleans City Council passed an ordinance which preferred residents of Orleans Parish in initial employment opportunities with the City and required all city employees to "reside" in Orleans Parish. Exemptions were allowed for those employees living outside Orleans Parish at the time of the adoption of the ordinance and for those individuals who obtained an exception from the appointing authority with approval of the Chief Administrative Officer (CAO).
On December 6, 1990, the City Council adopted Municipal Ordinance 14268, which enacted a new Article 22 of Chapter 2 of the City Code, prohibiting city employment to any person whose "domicile" was outside Orleans Parish. A transitional grandfather clause allowed city employees to continue living outside Orleans Parish until January 1, 1994, at which time compliance with the ordinance was required.
In 1991, the Police Association of New Orleans (PANO) filed a class action suit on behalf of its members and all employees of the City, seeking to have the ordinance declared unconstitutional. The trial court granted a temporary restraining order, enjoining the enforcement of the ordinance, and later certified the suit as a class action lawsuit, consolidating it with the lawsuit brought by New Orleans Fire Fighters' Association, Local 632 on behalf of the fire fighters of the City of New Orleans.
On March 8, 1991, the trial court issued a preliminary injunction prohibiting the enforcement of the ordinance on the grounds it violated Article X, Section 10(A) of the 1974 Louisiana Constitution by impinging upon the express powers of the City Civil Service Commission. The City appealed and this court reversed, holding the ordinance did not fall within the express or implied powers of the City Civil Service Commission and therefore did not violate Article X, Section 10(A) of the Louisiana Constitution. New Orleans Firefighters Association, Local 632, AFLCIO v. The City of New Orleans, 590 So.2d 1172 (La.1991). We did not address the plaintiffs' other arguments challenging the validity of the ordinance and remanded the case to the trial court to take additional evidence and to rule on these other arguments. Id. at 1177.
On June 18, 1992, the New Orleans City Council enacted Municipal Ordinance 15298, which amended and reenacted Article 22 of Chapter 2 of the City Code. The basic requirement of domicile was continued, with some changes in the definition of domicile. Also, a provision, entitled "Grandfather Clause," which became Section 2-805 of the City Code, exempted all officers or employees who on December 10, 1990 maintained their actual domicile outside Orleans Parish so long as they maintained the same out-of-city domicile, but with the proviso that these non-domiciliary employees must establish a *957 domicile within the city in order to accept a promotion.
On July 16, 1992, the New Orleans City Council enacted Municipal Ordinance 15420, amending and reenacting the grandfather clause. The new ordinance exempted all officers and employees who on or before August 27, 1973 maintained a domicile outside Orleans Parish, and those who established a domicile outside the city after August 27, 1973 but who obtained written permission to do so from the CAO, from the requirement that one establish a domicile in the city in order to accept a promotion. Those hired subsequent to August 27, 1973 and prior to December 10, 1990, who did not have written permission to maintain their domicile outside Orleans Parish were now the only employees subject to that requirement.
Thus, Article 22 of Chapter 2 of the City Code as presently written requires all city employees to be domiciled in the city, but excepts from that requirement all employees who were domiciled outside the city on December 10, 1990, as long as they maintain the same out-of-city domicile, and with the further proviso that those non-domiciliary employees hired after August 27, 1973 and prior to December 10, 1990, who did not have permission from the CAO to live outside of the city, must establish a domicile within the city in order to accept a promotion.
In response to the July 16, 1992 amendment to the grandfather clause, PANO filed a Supplemental and Amended Petition for Declaratory Judgment and a Request for a Temporary Restraining Order against the implementation and enforcement of the ordinance. The temporary injunction and later a preliminary injunction were granted. However, on April 23, 1993, following a hearing on PANO's request for a permanent injunction, the trial court upheld the constitutionality of the ordinance and dismissed PANO's suit.
The court of appeal reversed, finding the ordinance to be unconstitutional because (1) the provisions of the grandfather clause requiring non-domiciliary employees to establish their domicile in the city before accepting a promotion conflicts with Article X, Sections 7 and 10 of the Louisiana constitution giving the Civil Service Commission exclusive authority to regulate promotions; (2) since the provisions relating to promotions conflict with the constitutional provisions governing civil service, they also violate the home rule provisions of Article 6, Section 5(E) and 9(B); (3) the definition of "domicile" contained in the ordinance violates Article VI, Section 5(E), as it conflicts with general law, namely Louisiana Civil Code article 38, which defines "domicile"; (4) the denial of promotional rights to certain non-domiciliary employees as opposed to others, does not suitably further an appropriate governmental interest and is discriminatory, and therefore violates the due process and equal protection clauses of the Louisiana constitution, Article I, Sections 2 and 3. The judgment of the court of appeal decreed that municipal ordinance 15298 be declared unconstitutional and that the City be enjoined from enforcing the provisions of ordinance 15298, as amended by ordinance 15420.

II.
The court of appeal held the domicile ordinance unconstitutionally infringed upon the exclusive power of the City Civil Service Commission to adopt rules for the regulation of promotion of city employees under Article X, Section 7 of the 1974 Louisiana Constitution. The court of appeal also relied heavily on Article X, Section 10(A)(1), which gives the Civil Service Commission its general rulemaking powers. These Sections provide:
Section 7. Permanent appointments and promotions in the classified state and city service shall be made only after certification by the appropriate department of civil service under a general system based upon merit, efficiency, fitness, and length of service, as ascertained by examination which, so far as practical, shall be competitive. The number to be certified shall not be less than three; however, if more than one vacancy is to be filled, the name of one additional eligible for each vacancy may be certified. Each commission shall adopt rules for the method of certifying persons eligible for appointment, promotion, reemployment, and reinstatement and shall provide for appointments defined as emergency *958 and temporary appointments if certification is not required.
Section 10. (A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.
The court of appeal stated that the domicile ordinance "destroys the competitive promotional system based on merit and infringes upon the Commission's express and exclusive powers to adopt rules regulating promotion and establishing a general system of promotion pursuant to Article 10, Section 7." Police Ass'n of New Orleans, 93-1279, 93-2057, p. 9, 635 So.2d at 385.
Following our previous decision in New Orleans Firefighters Ass'n Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La.1991), we find the ordinance does not violate either Article X, Sections 7 or 10(A)(1) of the Louisiana Constitution. In New Orleans Firefighters, this court addressed the constitutionality of the 1990 version of the ordinance presently before us. That ordinance, No. 14268, prohibited city employment to any person whose domicile was outside Orleans Parish, with a transitional grandfather clause allowing city employees to continue living outside the parish until January 1, 1994, at which time compliance with the ordinance would be required. The present ordinance creates an exemption from the domicile requirement for those employees actually domiciled outside of the parish on December 10, 1990, but requires such employees to establish a domicile within the city in order to accept a promotion unless they were domiciled outside the parish prior to August 27, 1973 or if not, received permission from the CAO to maintain their domicile outside of Orleans Parish.
In New Orleans Firefighters, this court held that the power to adopt rules imposing residence and domicile requirements on municipal employees is generally within the power of the municipal governing authority constituting the legislative branch. We then held that the power to impose residency or domiciliary requirements does not fall within the areas specifically enumerated in Section 10(A)(1), and does not fall within the exclusive powers expressly or impliedly granted by the Constitution to the Civil Service Commission of the City of New Orleans, and thus upheld the constitutionality of the ordinance. We stated, "The power to adopt a residency requirement does not fall within a commission's express powers to adopt rules regulating the selection, hiring, promotion or demotion of public employees on the basis of merit." 590 So.2d at 1176 (emphasis added). Turning to the objectives of civil service, we stated, "A residency requirement is unrelated to the selection and promotion of public employees on the basis of merit, fitness and qualifications, to the security of tenure of public employees, or to the protection of public employees against political, religious, racial, gender or similar discrimination or intimidation." Id., at 1177.
The court of appeal held that our previous decision pertained only to domicile requirements as related to initial employment and not to promotions, and that the previous decision did not consider the provisions of Article X, Section 7 of the Louisiana constitution. Our previous decision is not so narrow in scope. Contrary to the statement by the court of appeal, it goes beyond dealing with initial employment. It deals with the 1990 ordinance, which not only required domicile for initial employment, but for continued employment. The opinion analyzed the effect of the domicile requirement not only on initial employment, but on promotion, suspension, removal, political activities, etc., holding that the domicile requirement did not impinge on any of these functions and powers of the Civil *959 Service Commission. The court took note of Section 7 as well as Section 10 of Article X. In short, the decision necessarily and expressly concerned itself with the effect of the domicile requirement on the Civil Service Commission's powers relating to all aspects of employment, including promotion.
Furthermore, Article X, Section 7 merely sets out the criteria to be used, and grants the Civil Service Commission the power to devise the method by which, employees are certified as eligible for appointment or promotion. The domicile ordinance does not impinge upon these methods and criteria set out in Section 7 for determining those eligible for promotion. It merely requires that prior to acceptance of the promotion and appointment to the new position, the eligible employee must establish his domicile in Orleans Parish. As we said in New Orleans Firefighters, such a domiciliary requirement is unrelated to the selection and promotion of public employees on the basis of merit, fitness and qualifications. Simply put, it is not necessary that the Civil Service Commission have exclusive power to adopt domiciliary or residency requirements in order to achieve the principal objectives of civil service, and such powers have not been granted to the Civil Service Commission under either Section 7 or 10(A)(1).
We find New Orleans Firefighters indistinguishable from the present case in any pertinent respect, and hold that it is controlling on the issue before us. We therefore hold that because the power to establish domiciliary requirements for non-domiciliary city employees to accept promotions does not fall within the exclusive powers expressly or impliedly granted by the Constitution to the Civil Service Commission under either Section 7 or Section 10(A)(1) of Article X of the 1974 Louisiana Constitution and because such domicile requirements are unrelated to the promotion of public employees on the basis of merit, fitness and qualifications, the court of appeal erred in holding Municipal Ordinance 15298, as amended by Municipal Ordinance 15420, unconstitutional under Article X, Section 7 of the Louisiana Constitution.
Because the court of appeal held that the ordinance violated Article X, Section 7, it also held that the ordinance violated Article VI, Section 5(E), which limits the exercise of power by a home rule charter government to those not denied by general law or inconsistent with the state constitution, and Article VI, Section 9, which limits home rule charter government powers by stating "the police power of the state shall never be abridged." Because of our holding that the ordinance is not in violation of Article X, Sections 7 and 10(A)(1), the court of appeal's holding in this regard is reversed as well. We note, also, that the court of appeal erred in applying Article VI, Section 5(E) since New Orleans is a home rule charter city preexisting the 1974 Louisiana Constitution, thus making Article VI, Section 4 applicable instead. City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690 (La. 7/5/94), 640 So.2d 237. Because of our holding that the ordinance in question does not violate Article X, Sections 7 or 10(A)(1), there is no violation of Article VI, Section 4's limitation that a preexisting home rule charter government may not exercise its power in a manner inconsistent with the constitution.

III.
The court of appeal held the definition of "domicile" in Municipal Ordinance 15298 was in conflict with the definition given that term under Louisiana Civil Code article 38 and, therefore, constituted a prohibited infringement on the general law in violation of Article VI, Section 5(E) of the 1974 Louisiana Constitution. We disagree.
Section 2-702(B) states:
B) "Domicile" shall have the same meaning defined in Article 38 Civil Code of Louisiana; provided, that for the purposes of this article, an officer or employee who resides in several places and who is required to have or maintain or establish a `domicile' in Orleans Parish shall have, maintain, or establish his or her `actual' domicile in Orleans Parish; and his or her `actual domicile' shall be determined on the *960 basis of actual facts and not on the basis of his or her mere declaration of domicile.[2]
Louisiana Civil Code article 38 defines "domicile" as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternatively in several places and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the person whose interest are thereby affected.
As noted in the previous section of this opinion, the court of appeal erroneously applied Article VI, Section 5(E) to the domicile ordinance. Since New Orleans is a home rule charter city preexisting the 1974 constitution, Section 4, and not Section 5 is applicable. Section 4 does not contain Section 5's limitation that the exercise of a home rule power not be denied by general law. Further, defining "domicile" differently than Article 38, strictly for purposes of this particular ordinance, which is a strictly local ordinance imposing domiciliary requirements on city employees, does not conflict with the Civil Code definition of domicile for other purposes. There is no legal basis for holding that the ordinance cannot define domicile for purposes of the ordinance differently than that term is defined in the Civil Code for other purposes. The mere incorporation of the definition of "domicile" provided by Article 38 does not alter this conclusion, as the ordinance contains a proviso further defining the term for purposes of the ordinance.
We therefore hold that the provision of Municipal Ordinance 15298, as amended by Municipal Ordinance 15420, defining "domicile" does not violate Article VI, Section 4 of the Louisiana constitution and Article VI, Section 5(E) is not applicable.

IV.
The court of appeal also found that the "grandfather clause," which requires certain non-domiciliary employees to establish a domicile within the city in order to accept a promotion, violates the due process and equal protection clauses of the Louisiana constitution. Before addressing the constitutionality of the grandfather clause, we must first address the propriety of the original domicile requirement for initial and continued employment as it relates to the due process and equal protection clauses of the Louisiana and United States Constitutions, as this has not yet been decided by this court.

A.
Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in areas of social and economic policy, a statutory classification which does not proceed along suspect[3] or *961 semi-suspect[4] lines, nor infringe fundamental rights,[5] need only be rationally related to a legitimate governmental interest. See e.g. Federal Communications Comm'n v. Beach Communications, Inc., ___ U.S. ___, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). See generally Rotunda & Nowak, Treatise on Constitutional Law, § 18.3 (1992). Likewise, the essence of the Due Process Clause of the Fourteenth Amendment, is protection from arbitrary and unreasonable action and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate governmental interest. Concrete Pipe & Prod. of California, Inc., v. Construction Laborers Pension Trust, ___ U.S. ___, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). See generally Rotunda & Nowak, supra, § 15.4.
The New Orleans ordinance creating a domicile requirement for initial and continued employment treats non-domiciliaries differently than domiciliaries. It does not discriminate against a suspect or semi-suspect class, nor does it impinge on a fundamental right. There is no fundamental right to government employment. United Bldg. & Constr. Trades Council v. Mayor and Council of the City of Camden, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Cf. McCarthy v. Philadelphia Civil Serv. Comm'n, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). Also, residency and domicile requirements as a condition of government employment have been held not to impinge on the fundamental right to interstate travel on the grounds that such right does not extend to intrastate travel or that such continuing residency or domicile requirements as opposed to durational residency or domicile requirements do not unconstitutionally impinge on the right to travel. McCarthy, supra; Wright v. City of Jackson, Mississippi, 506 F.2d 900 (5th Cir.1975); Andre v. Board of Trustees of the Village of Maywood, 561 F.2d 48 (7th Cir.1977); Kennedy v. City of Newark, 29 N.J. 178, 148 A.2d 473 (1959).
It is clear to us that the rational relationship test is the proper standard under which to scrutinize the New Orleans domicile requirement. The overwhelming majority of cases deciding the constitutionality of municipal employee residency or domicile requirements have so held, applying the rational relationship test and concluding that residency or domicile requirements as a condition to municipal employment bears a rational relationship to legitimate governmental interests.[6] E.g. McCarthy, supra; Detroit Police Officers Ass'n v. City of Detroit, 385 Mich. *962 519, 190 N.W.2d 97 (1971), appeal dismissed for lack of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972);[7]Mogle v. Sevier County School Dist., 540 F.2d 478 (10th Cir.1976); Wardwell v. Board of Educ. of City School Dist., 529 F.2d 625 (6th Cir.1976); Wright, supra; Pittsburgh Federation of Teachers v. Aaron, 417 F.Supp. 94 (W.D.Penn.1976); Conway v. City of Kenosha, Wisconsin, 409 F.Supp. 344 (E.D.Wis.1975); Ector v. City of Torrance, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), cert. denied, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974); Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767 (Miss.1972); Abrahams v. Civil Serv. Comm'n, 65 N.J. 61, 319 A.2d 483 (1974); Salt Lake City Firefighters Local 1645 v. Salt Lake City, 22 Utah 2d 115, 449 P.2d 239 (1969); Kennedy, supra. See also Validity, Construction, and Application of Enactments Relating to Requirement of Residency within or Near Specified Governmental Unit as Condition of Continued Employment for Policemen or Firemen, 4 A.L.R.4th 380 (1981) for a full compilation of cases dealing with various aspects of this issue.
The stated purposes of the City of New Orleans' domicile requirement are set out in the preamble to Municipal Ordinance 15298 as follows:
WHEREAS, the Council finds that the morale and efficiency of the City civil service will be enhanced by increasing the number of City officers and employees that have an "actual domicile" in the City and who therefore have a stronger and more direct interest and a greater stake in the City's general welfare and in the quality of life enjoyed by those who have their principal home in the City; and
WHEREAS, the Council finds that the strength of the City's economy will be enhanced and the pace of economic development in the City increased if steps are taken to maximize the portion of the City's personnel expenditures that is re-spent by employees of the City within the City; and
WHEREAS, the Council finds that there is a need to protect the City's tax base by encouraging the utilization, maintenance, improvement and redevelopment of residential properties in the City; and
WHEREAS, the Council finds that there is a need to foster and promote the establishment of actual domiciles in New Orleans by as many employed persons as possible; and
WHEREAS, the City intends to require all City employees to establish and maintain actual domiciles in Orleans Parish, and to require those now lawfully having an actual domicile elsewhere to establish Orleans Parish actual domiciles, when and if they choose to change their homes and actual domiciles, while avoiding hardship to its employees by permitting them to retain their currently-lawful homes and actual domiciles....
These are certainly legitimate governmental interests and we cannot say that the domicile requirement for initial and continued employment is not rationally related to furthering those interests. We therefore uphold the constitutionality of the basic domicile requirement for initial and continued employment under the Fourteenth Amendment's Equal Protection and Due Process Clauses.
Turning to our state constitution, we recognized in Sibley v. Board of Supervisors of Louisiana State Univ., 477 So.2d 1094 (La. 1985), that Louisiana, in Article I, Section 3 of its constitution, rejected the federal three-tiered system of equal protection analysis.[8] Interpreting Article I, Section 3 in Sibley, we held:

*963 Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situation: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
Sibley, 477 So.2d at 1107-8.
The system created by Article I, Section 3, and the interpretation placed upon it by this court in Sibley, shifted the focus from that of determining under which category a particular case falls (strict, intermediate, or minimum scrutiny), which then all but decided the case, to that of conducting an independent review of the specific merits of the individual case which necessarily entails a balancing or comparative evaluation of governmental and individual interests. Sibley, 477 So.2d at 1107; Allen v. Burrow, 505 So.2d 880 (La.App.2d Cir.1987). Cf. Pierre v. Administrator, Louisiana Office of Employment Sec., 553 So.2d 442 (La.1989); Kirk v. State, 526 So.2d 223 (La.1988).
Since the City's domicile requirement for initial and continued employment classifies individuals on a basis other than those enumerated in Article I, Section 3, the disadvantaged class must show that the challenged classification does not suitably further any appropriate state interest. The City's objectives, in short, are to create a work force of city employees who are domiciliaries of the city in order to boost morale and efficiency, create a greater and stronger interest in the city's welfare and economic development, and to protect the city's tax base. These are not only appropriate governmental interests, but important ones. Economic development and tax revenue are vital to a city's well being. Good morale and efficiency on the part of city employees are, one would think, most useful in governing a city in the best possible manner. It appears to us that imposing a domicile requirement for initial and continued employment suitably furthers these interests. It seems reasonable to believe that one who is actually domiciled in a city has a greater stake in its well being than one who is not. It also seems reasonable that one who lives in a city is likely to spend a larger percentage of his or her income within the city than one who lives outside of the city, thus spurring economic development and protecting the tax base. There are a myriad of appropriate governmental interests that may be suitably furthered by the City's domicile requirement for initial and continued employment. Therefore, we hold that the domicile requirement of the ordinance does not violate Article I, Section 3 of the Louisiana Constitution. Similarly, since the ordinance does not affect a fundamental right and does not constitute arbitrary and unreasonable action, but rather is rationally related to a legitimate governmental interest, it does not violate Article I, Section 2's substantive due process protections.

B.
Having established that the basic domicile requirement is constitutional under both the United States and Louisiana constitutions, we now turn to the "grandfather clause" and its requirement that only certain non-domiciliaries need establish a domicile within the city in order to accept a promotion. The court of appeal found that the "grandfather clause," which denies promotional opportunities to certain employees who maintained their domicile outside Orleans Parish between August 27, 1973 and December 10, 1990, violates the due process and equal protection clauses of the Louisiana constitution. The "grandfather clause" allows a certain class of non-domiciliary employees to accept promotions without establishing a domicile within the city, while requiring another class *964 of non-domiciliary employees to establish a domicile within the city in order to accept a promotion. The former constitutes those employees who established their domicile outside of the city prior to August 27, 1973, or who established their domicile outside of the city after August 27, 1973, but received specific permission to do so from the CAO, while the latter constitutes those establishing their domicile outside of the city after 1973 and who did not receive specific permission from the CAO. The legislative denial of promotional opportunities to the latter particularly defined class of employees does not further the City's objectives. The changes amount to discrimination without a furtherance of the City's interests, and constitutes a denial of Article I, Section 3's guarantee of equal protection of the laws.
In analyzing the "grandfather clause" under Article I, Section 3 of the Louisiana constitution, since the affected employees do not fall into any of the classes enumerated in Article I, Section 3, the law is to be rejected only when a member of the disadvantaged class shows that the law does not suitably further any appropriate governmental interest. Sibley, supra.
It is not entirely clear whether the plaintiffs' equal protection claim is aimed at the different treatment afforded the non-domiciliary employees as compared to the domiciliary employees, or at the different treatment afforded the two classes of non-domiciliary employees relative to promotions. As to the former, it is well established, as previously discussed, that residency requirements for continued employment of municipal employees does not violate equal protection, since such requirements suitably further an appropriate governmental interest. Furthermore, triggering termination of the grandfather clause for all non-domiciliary employees at the time of promotion is a logical step in the staged implementation of the domiciliary requirement and suitably furthers an appropriate governmental interest and therefore, does not violate equal protection. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); State ex rel. Guste v. K-Mart Corp., 462 So.2d 616, 619 (La.1985); Schwegmann Giant Super Markets v. Edwards, 552 So.2d 1241, 1247-48 (La.App. 1st Cir.1989); Forgette v. Vernon Parish Police Jury, 485 So.2d 237, 243-44 (La.App. 3d Cir.1986); Harrison v. Morehouse Parish Sch. Bd., 368 So.2d 1113, 1116 (La.App.2d Cir.1979).
However, allowing some non-domiciliary employees to accept promotions without having to establish their domicile within the city, while requiring certain other non-domiciliary employees to establish their domicile within the city in order to accept a promotion, does not suitably further any appropriate governmental interest. It is difficult to discern a reason why the latter group of non-domiciliary employees is treated less favorably than the former. The City argues that it is reasonable to treat those who established a domicile outside the city prior to enactment of the original residence ordinance in 1973 and those who did so after 1973 with specific permission by the CAO, in a more favorable manner than the others. The distinction, however, is most tenuous. The City argues that those non-domiciliaries allowed unfettered promotional opportunities were those that were in compliance with the original 1973 residency requirement, while those not allowed unfettered promotional opportunities were not. This reasoning ignores the ruling in Werner v. Department of Police, 435 So.2d 475 (La.App. 4th Cir.), writ denied, 441 So.2d 751 (La.1983), which squarely held that under the original residency requirement, a city employee may maintain two residences, one in the city and one outside of the city, and still be in full compliance with the residency law. Thus, contrary to the City's argument, those who are denied unfettered promotional opportunities under the grandfather clause did not fail to comply with the original 1973 ordinance merely by maintaining their domicile outside of the city and there is no justification for treating this class of non-domiciliary employees differently on this basis.
The distinctions between the two classes of non-domiciliary employees can hardly be said to suitably further any appropriate governmental interest. The only interest *965 furthered by the distinction between groups is that it will cause those members of the disadvantaged group who lawfully were domiciled outside of the city to move into the city in order to accept a promotion, while allowing other lawful non-domiciliaries to accept promotion without having to move into the city. After focusing on the specific merits of this case and undertaking a comparative evaluation of governmental and individual interests, as required by Article I, Section 3 and as explained in Sibley, we find this distinction does not suitably further an appropriate interest of the City. Thus those parts of the grandfather clause of Municipal Ordinance 15298, as amended by Municipal Ordinance 15420, requiring certain non-domiciliary employees to move into the city as a condition of promotion while exempting other non-domiciliary employees from that requirement violate the equal protection clause of the state constitution and must be stricken.

C.
The City argues, in the alternative, that any part of the provision that is declared unconstitutional should be severed from the ordinance, leaving the constitutional portions intact. The unconstitutionality of one portion of a law does not render the entire law unenforceable if the remaining portion is severable from the offending portion. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895 (La.1993); Radiofone, Inc. v. City of New Orleans, 616 So.2d 1243, 1249 (La.1993); State v. Azar, 539 So.2d 1222, 1226 (La.1989). The test for severability is whether the unconstitutional portions of the law are so interrelated and connected with the constitutional portions that they cannot be separated without destroying the intention of the legislative body enacting the law. Cox Cable, 624 So.2d at 895; Radiofone, 616 So.2d at 1249; Azar, 539 So.2d at 1226.
Initially, we point out that while the ordinance is not artistically drawn and is not entirely clear, all parties and the lower courts agree that the intent is to exempt from the domicile requirement all employees domiciled outside of the city on December 10, 1990, so long as they maintain their same domicile, with the exception that certain of these non-domiciliary employees, but not all, are required to establish city domiciles in order to accept a promotion. The question that must be answered is whether the unconstitutional portions of the ordinance may be separated without destroying the intention behind the ordinance.
Severing the discriminatory provisions would not destroy the principal objectives stated in the preamble to the ordinance:
[T]he City intends to require all City employees to establish and maintain actual domiciles in Orleans Parish, and to require those now lawfully having an actual domicile elsewhere to establish Orleans Parish actual domiciles, when and if they choose to change their homes and actual domiciles, while avoiding hardship to its employees by permitting them to retain their currently-lawful homes and actual domiciles....
(emphasis added). Furthermore, it seems clear from the grandfather clause as written, that the City Council wished to fully exempt some of the non-domiciliaries from the domicile requirements, including the requirement in relation to promotions. Considering this, and the preamble, we feel that striking only the provisions creating the classifications among the non-domiciliary employees which require some, but not all, to establish a domicile within the city in order to accept a promotion, is more in keeping with the intent behind the grandfather clause than would be striking the exemption altogether which would then result in a requirement that all non-domiciliary employees establish a domicile within the city in order to accept a promotion, or than would be striking the grandfather clause entirely.
We therefore strike as invalid, in violation of the equal protection clause of the Louisiana constitution, those provisions of the ordinance excluding only certain non-domiciliary employees from promotional opportunities, leaving the balance of the ordinance and the grandfather clause intact. Thus, all employees who were domiciled outside of Orleans on December 10, 1990 are exempt from the domicile requirement as long as they maintain the same outside domicile, *966 with no requirement that any of such non-domiciliary employees establish a domicile in Orleans in order to be promoted.

V.
Turning to plaintiffs' other arguments, we find no merit in PANO's argument that the domicile ordinance discriminates against white city employees and affirm the court of appeal's judgment in this respect. We also find no merit in PANO's argument that the domicile ordinance violates Louisiana Revised Statutes 40:2534, which provides "No law enforcement officer shall be required to disclose, for the purposes of promotion or assignment, any item of his property, income, assets, debts or expenditures or those of any member of such officer's household." This statute was clearly not intended to prevent the City from knowing the address or location of a police officer's domicile, and thus we affirm the court of appeal judgment in this respect.
We also reject PANO's argument that the domicile requirement is an ex post facto law and impairs the obligation of contracts and is thus unconstitutional under Article I, Section 23 of the Louisiana constitution. An ex post facto law is one passed after the commission of an offense which in relation to that offense or its consequences, alters the situation of a party to his disadvantage. State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978) (per curiam); Richey v. Hunter, 407 So.2d 427 (La.App. 1st Cir.1981). The ex post facto prohibition relates only to criminal or penal statutes. Bickman, supra; Richey, supra; Sapir v. Hardy, 349 So.2d 478 (La.App. 4th Cir.1977) (citing In re Craven, 178 La. 372, 151 So. 625 (1933)). It does not appear that the domicile ordinance is a criminal or penal statute, and at any rate it does not act retrospectively and the fact that present non-domiciliary employees are required to establish a domicile within the city if they in the future choose to change domiciles does not make it retrospective.
As to the impairment of contract claim, there was no vested right of the non-domiciliary employees to be domiciled wherever they choose, and any interest to be domiciled outside of the city was subject to the reasonable exercise of the City's police powers. Andre, supra; Salt Lake City Fire Fighters Local 1645, supra. Cf. Higginbotham v. City of Baton Rouge, 190 La. 821, 183 So. 168 (1938); Andrepont v. Lake Charles Harbor & Terminal Dist., 586 So.2d 722 (La.App. 3d Cir. 1991), reversed on other grounds, 602 So.2d 704 (La.1992).
Numerous other jurisdictions have held that such residency and domicile requirements do not violate either the United States Constitution or their state constitutions under either the prohibition on ex post facto laws or on laws impairing contracts. Andre, supra; Doris v. Police Comm'r of Boston, 374 Mass. 443, 373 N.E.2d 944 (1978); Hattiesburg Firefighters Local 184, supra; Salt Lake City Fire Fighters Local 1645, supra. For the reasons stated above, we agree with the holdings in these cases and reject PANO's ex post facto and impairment of contract claims. We likewise reject PANO's arguments based on principles of estoppel and detrimental reliance, as the non-domiciliary employees had no reasonable basis to believe that they would forever be able to remain domiciled outside of the city or that if they were so allowed it would be without restrictions.
PANO's final argument is that the domicile requirement violates a consent decree entered into by the City in a class action on behalf of black police officers filed in the United States District Court, Eastern District of Louisiana. Williams v. City of New Orleans, No. 73-629. However since PANO failed to raise this argument at the court of appeal they have abandoned it and may not raise it now. Further, this is a matter better pursued in the federal court which rendered the consent decree.
Turning then to the fire fighters' argument that the domicile ordinance constitutes an infringement of their collective bargaining agreement with the City, the trial court held that "[b]oth sides of the negotiation consciously avoided any contractual resolution of the residency [or domicile] issue, preferring to leave the matter up to the Court." We agree with the trial court's holding *967 and reject the fire fighters' claim in this regard.

DECREE
For the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeal. We declare unconstitutional, as violative of Article I, Section 3 of the Louisiana constitution, only those provisions of Municipal Ordinance 15298, as amended by Ordinance 15420, imposing upon the class of non-domiciliary employees hired between August 27, 1973 and December 10, 1990 who did not get specific permission from the Chief Administrative Officer to maintain out-of-city domiciles, the requirement that they establish a domicile within the city in order to accept a promotion. Such provisions are severed from the valid portions of the ordinance leaving the balance of the ordinance and the grandfather clause intact. Thus, all officers and employees who maintained their actual domicile outside of Orleans Parish on December 10, 1990 are exempt from the domicile requirement as long as they maintain the same outside domicile, with no requirement that any of such non-domiciliary employees establish a domicile in Orleans Parish in order to be promoted. Otherwise, plaintiffs' demands are rejected.
AFFIRMED, IN PART, REVERSED, IN PART, AND RENDERED.
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] Under Article V, Section 5(D) of the Louisiana constitution, this court has appellate jurisdiction of cases in which a municipal ordinance is held unconstitutional. There are no provisions of the Code of Civil Procedure or court rules dealing with how this court's appellate jurisdiction is invoked from a decision of the court of appeal declaring an ordinance unconstitutional. The filing of a writ application or motion for appeal in this court within the delay for filing a writ application as provided in Louisiana Code of Civil Procedure article 2166, as was done in this case, is the appropriate procedure.
[2] This provision goes on to define "actual domicile" as:

C) "Actual domicile" shall mean a person's principal domestic establishment, the determination of which is based upon such actual facts as where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and comforts of home, as contrasted with a business establishment or a residence that is not a principle home. For the purpose of this Article, one may have only one actual domicile, and that actual domicile shall be deemed to be the residence which meets the following criteria more than any other residence:
a) he or she usually sleeps there;
(b) he or she keeps most clothing, toiletries, household appliances, and similar personal property of daily utility there;
(c) he or she is registered to vote there;
(d) He or she or a spouse with whom he or she lives has a telephone there in his or her name which is not usually on call-forward to another residence;
(e) he or she directly receives and opens most non-city mail addressed to him or her there;
(f) he or she is free to enter the premises without notice to or permission from others;
However, for the purposes of this article, voters registered in another parish or county are presumed not to have their actual domicile in Orleans Parish.
[3] E.g. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry). Statutes drawing lines along such suspect classifications are subject to strict scrutiny and must be necessary to achieve a compelling state interest.
[4] E.g., Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (illegitimates); Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender). Statutes drawing lines along semi-suspect classifications are subject to intermediate scrutiny and must substantially further an important state interest.
[5] E.g., Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (rights guaranteed by the First Amendment); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (right to vote); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right of interstate travel). Statutes impinging on fundamental rights are subject to strict scrutiny as are those drawn along suspect lines.
[6] As stated by the court in Ector v. City of Torrance, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), cert. denied, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974):

Among the governmental purposes cited in these decisions ... are the promotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries.
Ector, 109 Cal.Rptr. at 852, 514 P.2d at 436.
[7] This constitutes a decision on the merits. McCarthy, supra; Wright v. City of Jackson, Mississippi, 506 F.2d 900 (5th Cir.1975); Ahern v. Murphy, 457 F.2d 363 (7th Cir.1972).
[8] Article I, Section 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.