I,WALTZER, Judge.
STATEMENT OF THE CASE
On 9 May 2000, Joseph Aldor, a permanent status employee of the New Orleans Department of Fire (NOFD) was charged with violation of C.A.O. Policy 19, found in New Orleans Code, Article X, Section 2-971 et seq. (the Domicile Ordinance) requiring him to be domiciled in Orleans Parish. Aldor was then placed on suspension. He appeared before a NOFD disciplinary hearing board where he pleaded not guilty and presented evidence and testimony. On 23 May 2000, Warren E. McDaniels, NOFD Superintendent, advised Aldor that he had reviewed the evidence and found Aldor guilty as charged of providing a false address and of being domiciled outside Orleans Parish. McDan-iels’ letter terminated Aldor’s employment effective 23 May 2000.
On 1 June 2000, Aldor appealed his termination to the New Orleans Civil Service Commission (CSC). A CSC hearing was held on 18 July 2000 and was continued on 8 September 2000. The CSC denied Al-dor’s appeal in an opinion ^authored by Vice Chairman William R. Forrester, Jr. with the concurrence of Chairman Sidney H. Cates, IV and Commissioner Pamela M. Davis.
Aldor appeals from the CSC’s denial of his appeal. We affirm.
STATEMENT OF FACTS
The City called the owners of both the houses at which Aldor lives: 645 Avenue H in Jefferson Parish and 5128 Feliciana Street or Drive in Orleans Parish[1]. Darlene Rotolo testified that she and her husband own the two-story single family dwelling located at 645 Avenue H in West-wego. They have rented the property to Aldor for over a year on a month-to-month basis at the rate of $700 per month plus utilities. On the occasion that she and her husband entered the house, there were pictures on the wall and the three-bedroom house was fully furnished, with no vacant rooms.
Mohammed Ahmed testified that he has owned and lived at 5128 Feliciana Drive, New Orleans, Louisiana since June, 1980. He testified that he attended St. Augustine High School with Aldor. Mohammed Ahmed testified that Aldor moved into his home in 1995 after he separated from his wife and now lives with Mohammed Ahmed and his wife in their two-bedroom home. Aldor has clothing, a minimal supply of toiletries, a room, and a separate telephone. Aldor receives some mail, mostly “junk” mail and mail from NOFD, at their home. Aldor pays only for his telephone line. He has no other separate utilities at Mohammed Ahmed’s house. According to Mohammed Ahmed, Aldor stays with him only | infrequently, no more than once a week, but is free to enter the house whenever he wishes. Aldor pays and Mohammed Ahmed accepts as rent whatever amount in any particular month Aldor chooses to pay. Rent is usually paid six times per year. Mohammed Ahmed admitted that he had no documentary proof, including receipts or income tax returns, that he had in fact received rental *115 payments in any amount at any time from Aldor.
The City offered the testimony of several of Aldor’s Westwego neighbors. Gerald Breaux of 650 Avenue H in Westwego, Louisiana, testified that Aldor stayed across the street once or twice every two weeks during the past eighteen months.
Livette Porter of 626 Avenue H, West-wego, Louisiana identified Aldor as her “very good neighbor”. According to Ms. Porter, Aldor parks his truck in the driveway across the street from her home.
Katie Jackson of 647 Avenue H, West-wego, Louisiana, also identified Aldor as a “good neighbor” who comes to a house next door to her on occasions, but not on a daily basis. She testified that she had seen Aldor in his NOFD uniform at the Avenue H house.
All of the NOPD investigators who participated in the investigation of Aldor’s domicile were present at the hearing. By agreement of the parties, the supervisor of the inspectors was allowed to present all the evidence collected by the various investigators. Mark Jee, Chief of the NOFD’s Fire Prevention Division and a twenty-three year NOFD veteran, testified that he coordinated the investigation of Aldor’s domicile in connection with Aldor’s having been on a NOFD promotion list.
14Jee testified that his investigators began surveillance at 5128 Feliciana Street at 7:15 p.m. on 21 March 2000. Aldor’s truck, a 1992 blue/green Chevrolet pickup with license PF-517 was not seen there. The investigator saw the Ahmeds’ Toyota at the location. The same result obtained at 2:31 a.m. on 22 March 2000; 12:48 a.m. and 5:30 a.m. on 26 March 2000; 7:00 a.m., 6:00 p.m., and 11:15 p.m. on 4 April 2000; 7:30 p.m. on 5 April 2000; and 3:45 p.m. on 6 April 2000.
The investigators followed Aldor from work on 26 March 2000 to the Westwego residence where he pulled into the driveway at about 7:30 a.m., got out of his truck, unlocked the door without anyone’s permission, went to the mailbox and retrieved mail from the mailbox. He then entered the home. Aldor left the house at 7:50 a.m. and returned at 8:05 a.m. Subsequent surveillance found Aldor’s truck at the Westwego location at 9:30 a.m. and 12:30 p.m. on 30 March 2000; at 5:39 a.m. on 31 March 2000; at 12:38 a.m. on 3 April 2000[2]; at 7:15 a.m. on 4 April 2000, leaving the house at 7:50 a.m., returning at 8:50 a.m. and leaving again at 10:37 a.m.; 6:30, 7:00, 7:30, 8:00 and 8:30 a.m. and 12:30, 1:00, 1:31, 2:00, 2:30, 3:00, 3:30, 3:38 and 4:07, 4:10 and 4:34 p.m. on 5 April 2000. The investigator observed Aldor on 5 April at about 1:00 p.m. wearing his NOFD tee shirt and washing his truck in the Westwe-go house’s driveway. The truck was also observed at 645 Avenue H at 12:30, 3:00 and 6:00 am. on 12 April 2000; at midnight, 11:11 and 11:43 am. and at noon on 13 April 2000; at 12:34 and 6:00, am. on 14 April 2000; at 1:30 and 5:45 am. on 15 April 2000; 12:15 and 6:27 am. on 17 April 2000; and 7:27 am. on 19 April 2000, when the investigator observed Aldor, dressed in his NOFD tee shirt, drive to the Westwego house, park, exit the | struck and enter the house. Furthermore, the truck was observed at 645 Avenue H at 11:10 and 11:40 am. on 20 April 2000; and 12:33 am. on 27 April 2000. On 27 April 2000 at 5:40 a.m., the investigator observed Aldor getting into his truck at 645 Avenue H and driving toward New Orleans. The next day at 7:17 a.m., the investigator observed the *116 truck in the 645 Avenue H driveway. On 1 May 2000, Aldor was observed driving toward Avenue H at 7:12 a.m. He parked at 645 Avenue H and took clothing out of the track and entered the house. The investigator observed the track parked at 645 Avenue H at 12:32 and 5:45 a.m. on 6 May 2000.
Investigator Paul DeGrange testified that during his surveillance, he never saw anyone other than Aldor enter the West-wego house or drive the truck. Based on his observations during surveillance of Al-dor and the Westwego house he concluded that Aldor spent his nights, kept toiletries, kept household appliances and received mail at the Westwego house.
Investigator Edward Wright testified that during his surveillance he saw Aldor, and no one else, enter the Westwego house without knocking and retrieve mail there. The surveillance supported the finding that Aldor regularly slept, used toiletries and retrieved mail in Westwego, and was able to come and go from the Westwego home without having to obtain permission from anyone else.
Following the surveillance, the investigators determined from property records that Mohammed Ahmed owned 5128 Feli-ciana. The parties stipulated to Mohammed Ahmed’s ownership of the property. The investigators determined that the electric and gas utility service and water service for 5128 Feliciana Drive are in Mohammed Ahmed’s name. BellSouth records showed Aldor as having two open | ¿residence accounts: (504)283-4464 638 for 5128 Feliciana Drive and (504)347-0762 313 for 645 Avenue H in Westwego.
Aldor testified that he slept at various locations because “I have lady friends, I sleep with ladies.” He admitted that he had a lease on the 645 Avenue H house, and said he went there “to rest my head between jobs” and to freshen up for perhaps 45 minutes between his four jobs, which included work as a paramedic for St. Charles Hospital in Luling, Westwego EMS and East Jefferson Hospital. He testified that he kept equal amounts of toiletries on Feliciana Street, Avenue H and in his track, and kept his iron and ironing board in his track. He denied having received any mail except a water bill at the Westwego house. He testified that he is free to enter both the Feliciana house and the Westwego house with his own key. He also keeps his pets, a turtle and some fish, at the Westwego house. Under cross-examination, Aldor testified that he maintained the Feliciana Street arrangement with the Ahmeds, in which he lived in their second of two bedrooms, to be within Orleans Parish and thus to be able to work for NOFD, and also “to live there on occasions.”
The City produced Aldor’s 3 September 1995 declaration of domicile at 2307-1/2 Soniat Street since 12 February 1995. According to that declaration, Aldor had no other residences. The parties stipulated to Aldor’s change of address form changing his address to 5128 Feliciana Street, New Orleans, Louisiana 70126, effective 25 March 1998. Aldor’s driver’s license shows his address as 5128 Feliciana Street, and he has been registered to vote at that address since 7 January 1997. The parties stipulated that he voted in Orleans Parish fifteen times during the twelve years between 6 November 1984 and 5 November 1996.
17Having considered the evidence, the CSC agreed with the Hearing Examiner that Aldor resides “more” in Jefferson Parish than he does in Orleans Parish and is considered to be domiciled in Jefferson Parish. The CSC concluded that Aldor’s establishment of a nominal address in Orleans Parish and remaining registered to vote there while actually living most of the *117 time in Jefferson Parish undermines the policy of the domicile ordinance.
STANDARD OF REVIEW AND BURDEN OF PROOF
We review the judgment of the CSC under the manifest error standard. Goins v. Department of Police, 570 So.2d 93, 95 (La.App. 4 Cir.1990). We must give great weight to factual conclusions of the trier of fact, and are not to disturb reasonable evaluations of credibility and reasonable inferences of fact where there is a conflict in testimony. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id., citing Rosell v. ESCO, 549 So.2d 840 (La.1989).
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the City Civil Service Commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 112-13 (La.1984). The Commission’s decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
|sThe Commission has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee’s conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id., at 1315.
In reviewing the Commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this Court should not modify the Commission’s order unless it is arbitrary, capricious or characterized by an abuse of discretion. Walters, 454 So.2d at 114. “Arbitrary or capricious” means that there is no rational basis for the action taken by the Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The Commission has the authority' to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Branighan v. Department of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause. Id. at p. 1222.
The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause. Joseph v. Department of Health, 389 So.2d 739, 741 (La.App. 4 Cir.1980); Branighan, 362 So.2d at 1223. The Commission is not charged with such operation or such disciplining. Id.
*118 FIRST ASSIGNMENT OF ERROR: The CSC erred in assessing the evidence pertaining to Aldor’s living arrangements in and out of Orleans Parish. Its decision was not supported by a preponderance of the evidence and was unreasonable, arbitrary and capricious.
The Domicile Ordinance requires all City employees to have an actual domicile in New Orleans. Among the purposes of the Domicile Ordinance are enhancement of morale and efficiency of City civil service; economic stimulation resulting from maximizing the portion of the City’s personnel expenditures that is re-spent by City employees within the City; protection of the City’s tax base by encouraging the utilization, maintenance, improvement and redevelopment of the City’s residential properties; and promoting establishment of domiciles in New Orleans by as many employed persons as possible. See, Preamble to Municipal Ordinance 15298 (Domicile Ordinance).
The Louisiana Supreme Court upheld the constitutionality of that portion of the Domicile Ordinance applicable to Aldor in Police Association of New Orleans v. City of New Orleans, 94-1078 (La.1/17/95), 649 So.2d 951. The court noted that the domicile requirement for initial and continued employment is rationally |inrelated to furthering the legitimate interests set forth in the preamble to the Domicile Ordinance. Id. At pp. 14-15, 649 So.2d at 962-63. The basic domicile requirement is constitutional under both the United States and Louisiana constitutions. Furthermore, the court held that the Domicile Ordinance’s definition of “domicile”, which differs from the definition of domicile contained in the Civil Code, does not constitute a prohibited infringement of the general law in violation of Article VI, Section 5(E) of the 1974 Louisiana Constitution.
The Domicile Ordinance defines “domicile”:
B) “Domicile” shall have the same meaning defined in Article 38 Civil Code of Louisiana; provided, that for the purposes of this article, an officer or employee who resides in several places and who is required to have or maintain or establish a “domicile” in Orleans Parish shall have, maintain, or establish his or her “actual” domicile in Orleans Parish; and his or her “actual domicile” shall be determined on the basis of actual facts and not on the basis of his or her mere declaration of domicile.
C) “Actual domicile” shall mean a person’s principal domestic establishment, the determination of which is based upon such actual facts as where a person sleeps, takes his meals, has established his household, and surrounds himself with his family and comforts of home, as contrasted with a business establishment or a residence that is not a principle [sic] home. For the purpose of this Article, one may have only one actual domicile, and that actual domicile shall be deemed to be the residence which meets the following criteria more than any other residence:
(a) he or she usually sleeps there;
(b) he or she keeps most clothing, toiletries, household appliances, and similar personal property of daily utility there;
(c) he or she is registered to vote there;
(d) he or she or a spouse with whom he or she lives has a telephone there in his or her leñame which is not usually on call-forward to another residence;
(e) he or she directly receives and opens most non-city mail addressed to him or her there;
(f) he or she is free to enter the premises without notice to or permission from others;
*119 However, for the purposes of this article, voters registered in another parish or county are presumed not to have their actual domicile in Orleans Parish.
Thus, for purposes of the ordinance, there can be only one “actual domicile”. If a person lives in more than one establishment, actual domicile is determined by weighing the facts of the particular case against the factors set forth in the ordinance and deciding which residence satisfies the criteria to the greater extent.
The record amply demonstrates that Al-dor’s arrangement with the Ahmeds was a residence of convenience, established in order to circumvent the Domicile Ordinance. There is considerable, credible evidence that Aldor slept in Westwego, kept his toiletries, clothing and household goods there, kept his pets there, has a telephone there in his name and is free to enter the premises without notice to or permission from others. The CSC’s assessment of this evidence was not manifestly erroneous or clearly wrong.
This assignment of error is without merit.
SECOND AND THIRD ASSIGNMENTS OF ERROR: The CSC erred in not addressing the question of legal cause supporting Aldor’s termination. NOFD produced no evidence of a correlation between Aldor’s alleged violation of the Domicile Ordinance and the effective operation of the NOFD or any other 11?,aspect of the City’s public service. The CSC unreasonably and arbitrarily held that the Domicile Ordinance contains strict criteria that Aldor was obliged to satisfy. This unconstitutional shifting of the burden of proof is neither compelled by nor inferable from the ordinance.
A Civil Service determination that the NOFD’s disciplinary action was based and legal cause and the punishment is commensurate with the infraction is not to be disturbed absent a showing that the CSC’s order is arbitrary, capricious or characterized by an abuse of discretion.
In Police Association of New Orleans v. City of New Orleans, supra, the supreme court noted that the Domicile Ordinance was constitutional in its effect on the CSC’s powers relating to all aspects of employment and promotion. The ordinance, with its mandatory language requiring actual domicile in Orleans Parish, has been held not to infringe on the CSC’s powers to adopt rules regulating the selection, hiring, promotion or demotion of public employees on the basis of merit. Id. At p. 7, 649 So.2d at 958, citing New Orleans Firefighters Ass’n Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La.1991).
Because of the mandatory nature of the Domicile Ordinance, the City was not required to offer evidence that violation of the ordinance in the instant case impaired the efficiency of the NOFD or public service in general. The preamble to the Domicile Ordinance contains specific legislative findings of the need for the ordinance, and the supreme court explicitly found the ordinance to be reasonable. The adoption of the ordinance expresses the legislative will mandating that all |1?iNOFD employees shall live in Orleans Parish. The Louisiana supreme court has upheld the constitutionality of the ordinance against a wide variety of attacks. The ordinance is established law, and we readily may infer that violation of that law by an NOFD member not only conflicts with the purposes stated in the preamble to the ordinance and with the terms of the ordinance itself, but also adversely affects NOFD morale.
*120 This assignment of error is without merit.
FOURTH ASSIGNMENT OF ERROR: The CSC erred by failing to review the severity of the discipline imposed on Al-dor to determine if it was commensurate with the offense.
The Domicile Ordinance contains its own mandatory penalty for violation. It requires that a NOFD employee who resides in several places shall have, maintain, or establish his or her actual domicile in Orleans Parish. Aldor’s termination is not a discipline in the sense of a choice among available alternative punishments. The clear meaning of the ordinance allows for no other result than termination upon a finding that an employee’s actual domicile is not within Orleans Parish.
This assignment of error is without merit.
^CONCLUSION AND DECREE
The judgment of the Civil Service Commission is affirmed. Costs are assessed against the appellant.
AFFIRMED.

. The record evidence refers at times to "Feli-ciana Street” and at times to "Feliciana Drive.” The use of "Street” or "Drive” in this opinion follows the usage of the particular evidence to which reference is made.

. The Hearing Officer and witness opined that the document should have been dated "4 April 2000” to coincide with the surveillance pattern which provided for surveillance near the midnight preceding Aldor's NOFD duty.