590 So.2d 1172 (1991)
NEW ORLEANS FIREFIGHTERS ASSOCIATION LOCAL 632, AFL-CIO and its President William J. Sanchez.
v.
CITY OF NEW ORLEANS consolidated with
The POLICE ASSOCIATION OF NEW ORLEANS, et al.
v.
The CITY OF NEW ORLEANS, a Louisiana Municipality.
No. 91-CA-0969.
Supreme Court of Louisiana.
December 2, 1991.
*1173 William D. Aaron, Jr., City Atty., Cheryl M. Gaines, Asst. City Atty., Elmer G. Gibbons, Kathy Lee Terregano, Brett J. Prendergast, Deputy City Attys., for appellants.
Louis L. Robein, Jr., Gilbert R. Buras, Jr., Robert H. Urann, Gardner, Robein & Urann, Nancy Picard, Metairie, Frank G. DeSalvo, David Rash, Dale Charles Wilks, New Orleans, Sidney M. Bach, Gerald Wasserman, Bach and Wasserman, Metairie, Vernon V. Palmer, New Orleans, for appellee.
LEMMON, Justice.
This is a direct appeal under La.Const. art. V, § 5(D) from a judgment of the district court declaring unconstitutional New Orleans Municipal Ordinance 14,268, which requires that all City employees be domiciled in Orleans Parish within a certain period following the effective date of the ordinance. The principal issue raised by this appeal is whether the power to impose domicile requirements on municipal employees is vested in the municipal civil service commission or in the municipal governing authority.

I
In 1973 the New Orleans City Council adopted a residency ordinance which required all employees of the City to reside in Orleans Parish, but allowed exemptions for those employees who lived outside Orleans Parish at the time of adoption of the ordinance and for those employees who thereafter, on an individual basis, obtain an exemption from the appointing authority with the approval of the Chief Administrative Office.
*1174 In 1990 the City Council adopted Municipal Ordinance No. 14,268, effective December 10, 1990, prohibiting city employment to any person whose domicile is outside Orleans Parish.[1] A transitional grandfather clause allowed city employees who were in compliance with the 1973 ordinance at the time of the adoption of the new ordinance to continue living outside the parish until January 1, 1994. The ordinance also provided for dismissal of an employee for a knowing failure to comply with the ordinance and for fines and/or imprisonment against any person who makes false representations in connection with the ordinance.
After the ordinance was adopted, the City's Chief Administrative Officer distributed a form to all employees and required them to certify their domicile pursuant to the definition of domicile contained in the ordinance.
The New Orleans Firefighters Association and the Police Association of New Orleans responded by obtaining a temporary restraining order from the federal district court which prohibited the City from implementing the ordinance or requiring certification of domicile. However, because of substantial unresolved state constitutional law issues, the federal court issued an order of abstention, stayed the case pending final resolution of the state law issues, and dissolved the temporary restraining order.
The City then issued another memorandum requiring employees to certify their domiciles. The same plaintiffs filed these class actions seeking a declaratory judgment on the constitutionality of the ordinance and an injunction to prohibit the City from enforcing the unconstitutional ordinance. The trial court consolidated the actions and certified the class actions.
After the hearing on the preliminary injunction, the trial court issued the following judgment:
Based upon the verified pleadings, affidavits, and deposition testimony in this case, and the law, particularly the provisions of Article X, Section 10(A) of the 1974 Louisiana Constitution, it is ordered, adjudged and decreed that the defendant, the City of New Orleans, its agents, officers and employees be and are hereby preliminarily enjoined from enforcing or implementing Municipal Ordinance No. 14268, as unconstitutional. In all other respects, the preliminary injunction is denied, particularly, as to the Certification of Domicile/Residence Form.
The City appealed directly to this court.

II
The Louisiana Constitution has contained detailed provisions for the state and city civil service systems since 1952.[2] The principal *1175 objectives of the civil service system are to select and promote public employees competitively on the basis of merit, fitness and qualifications, to secure the tenure of public employees, and to protect public employees against discrimination, intimidation or dismissal because of political or religious beliefs, sex, race or other unjustified reasons. 3 Projet of a Constitution for the State of Louisiana 501 (1954); H. Kaplan, The Law of Civil Service 63 (1958); 1 J. Stein, G. Mitchell & B. Mezines, Administrative Law §§ 5.06, 5.07 (1990); La. Const. art. X, §§ 7 and 8(B). The Projet noted that the primary function of the state and city civil service commissions in Louisiana is to "see to it that the rank and file of state and city employees are selected competitively on the basis of merit, free from political influence" and to "see that these employees are protected from dismissal or discriminatory treatment because of religious or political reasons." Id. at 504.
In order to achieve these objectives, La. Const. art. X, § 10(A)(1) grants broad and general rulemaking powers to the state and city civil service commissions to regulate the classified service, as follows:
Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.[3]
The rules adopted by a civil service commission pursuant to this authority "have the effect of law," and the commission may "impose penalties for violations of its rules by demotion in or suspension or discharge from position, with attendant loss of pay." La. Const. art. 10, § 10(A)(4).
This court, in interpreting the power granted to the commissions under a similar provision of the 1921 Constitution, recognized in Barnett v. Develle, 289 So.2d 129, 143 (La.1974):
The patent purpose of Section 15 is to insure uniform treatment of all similarly classified employees in the State and municipal civil service systems provided for therein. To avoid discrimination and favoritism, to promote efficiency of governmental operation, and to encourage promotion based on merit, the electorate, by adoption of Section 15, has placed certain aspects of State and municipal classified employment beyond the pale of state and local governmental control.

III
Thus, a city civil service commission has the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1), and the city governing authority cannot constitutionally infringe on the commission's exercise of this power. Moreover, the convention debates surrounding the adoption of Section 10(A)(1) indicated an intent that this provision should be construed liberally in favor of fulfilling the goals of civil service. New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 *1176 So.2d 402 (La.1982). However, in areas of power affecting public employees which are not enumerated in Section 10(A)(1), a commission's powers should not be expanded beyond those necessary to effectuate the objectives and purposes of the civil service. Thus, this court in the Firefighters case held that it was not necessary for the Civil Service Commission of the City of New Orleans to have power to modify statewide minimum wage levels established by the Legislature in order to adopt a uniform pay and classification plan for the City or to achieve the civil service objectives of safeguarding merit selection and promotion, protecting against discriminatory dismissal, and safeguarding public employees from political influence or reprisal. Id. at 411.
The power to adopt rules imposing domiciliary or residency requirements on municipal employees would generally fall within the power of the municipal governing authority constituting the legislative branch. While arguably the Constitution or statutes could confer this power on the municipal civil service commission, the power to impose residency requirements does not fall within the areas of power specifically enumerated in Section 10(A)(1).
Of the specific areas of power enumerated in Section 10(A)(1), "employment" refers in context to the selection and hiring of employees, and "promotion" and "demotion" refer to the raising or lowering in position of employees after employment. The power to adopt a residency requirement does not fall within a commission's express powers to adopt rules regulating the selection, hiring, promotion or demotion of public employees on the basis of merit.[4] Moreover, as to the objectives of civil service, a residency requirement is unrelated to the competitive selection and promotion of public employees on the basis of merit, fitness and qualifications.[5]
"Suspension" refers to the temporary removal of a public employee from service, and "removal" refers to the permanent separation from employment. The power to adopt a residency requirement does not fall within a commission's express power to adopt rules regulating the suspension and removal of public employees.[6] The Constitution itself provides for suspension or removal of an employee for cause stated in writing and grants the disciplined employee the right of appeal to the appropriate commission. La. Const. art. X, § 8(A). A residency requirement is not pertinent to the prohibition against subjecting a permanent employee to disciplinary action except for cause.
"Qualifications" for employment refer to requirements as to education, experience or similar factors. Residency is not a quality or skill that fits a person for a particular position in the classified service. A residency requirement, therefore, does not fall within a commission's express or implied power to adopt rules regulating qualifications of public employees.
"Compensation" and "reduction in pay", as are "qualifications" and "certification", are related to a commission's express power to adopt a uniform pay and classification plan, but a residency requirement has nothing to do with that power.
Regulation of "political activities" involves the power of a commission not only to limit the political activities of public employees, *1177 but also conversely to protect public employees from discrimination and intimidation on the basis of political beliefs. A residency requirement has no bearing on these considerations.
Regulation of "employment conditions" concerns safety, hours of work, freedom from intimidation and the like, but a residency requirement is unrelated to these considerations.
Neither is it necessary in this case for the Civil Service Commission of the City of New Orleans to have the exclusive power to adopt domiciliary or residency requirements in order to achieve generally the principal objectives of civil service. A residency requirement is unrelated to the selection and promotion of public employees on the basis of merit, fitness and qualifications, to the security of tenure of public employees, or to the protection of public employees against political, religious, racial, gender or similar discrimination or intimidation.
We therefore conclude that the power to establish residency or domiciliary requirement for city employees does not fall within the exclusive powers expressly or impliedly granted by the Constitution to the Civil Service Commission of the City of New Orleans. Therefore, Ordinance 14,268 is not unconstitutional as violative of La. Const. art. X, § 10(A)(1).

IV
Plaintiffs have asserted other arguments contesting the constitutionality of Ordinance 14,268.[7] This court has the power and authority to consider plaintiffs' other arguments offered in support of the judgment which declared the ordinance unconstitutional as violative of Article X, Section 10(A)(1). La.Code Civ.Proc. art. 2133 B; Mire v. City of Lake Charles, 540 So.2d 950 (La.1989). However, plaintiffs' other constitutional contentions raise fact-sensitive issues which should be developed at a trial on the merits. The trial court has conducted a hearing only on the preliminary injunction, and either party at the trial on the merits of a final injunction may introduce evidence in addition to that which is presently before this court. Under these circumstances we deem it more appropriate to remand the case to the trial court for additional evidence and for a decision on the remaining contentions regarding the constitutionality of Ordinance 14,268.

V
Accordingly, the judgment of the district court declaring Ordinance 14,268 unconstitutional as violative of La. Const. art. X, § 10(A)(1) is reversed, and the case is remanded to the district court for further proceedings in accordance with this opinion.
HALL, J., dissents.
NOTES
[1] The ordinance defined "domicile" as follows:

"Domicile" shall mean the principal residential establishment in which an officer or employee makes his or her habitual residence; if he or she resides alternatively in several places, then, for the purposes of this Article, his or her principal establishment shall be deemed to be either 1) if the officer or employee does not own a residence in Orleans parish, the residence in which the officer or employee most frequently spends daily sleeping periods, or 2) if the officer or employee owns and occupies, as a resident, a residence in Orleans Parish and does not own a residence in another parish or county, the said residence owned by him or her, or 3) if the officer or employee owns and occupies, as a resident, a residence in Orleans Parish and also owns and occupies, as a resident, another residence in another parish or county, the residence in which the officer's or employee's ownership interest has the greatest monetary value as reflected on the ad valorem property tax roll, provided that if the property owned and occupied by the officer or employee has more than one residential unit and the residential units are not separately listed on the assessment rolls, the total value for the property shall be divided by the number of units for purposes of comparison. However, for the purposes of this article, voters registered in another parish or county and/or homeowners who claim a homestead exemption in another parish or county are not deemed domiciled in Orleans Parish.
The foregoing definition of "domicile" shall serve, exclusively, as the definition of that term for purposes of this Article, without regard to any definition set forth in the Civil Code or other general civil laws.
[2] Provisions for the civil service system were placed in the constitution so that the system can be repealed or amended only by a vote of the people, thereby removing the system from control of a temporary majority of the Legislature. 3 Projet of a Constitution for the State of Louisiana 572 (1954). The delegates to the 1973 Constitutional Convention adhered to this theme by rejecting an amendment that would have allowed the Legislature by a two-thirds vote to change the nature and powers of the system. 9 Records of the Louisiana Constitutional Convention of 1973: Convention Transcript pp. 2595, 2633.
[3] La. Const. art. 14, § 15(I)(1921) granted state and city service commissions the power to adopt and enforce rules regulating the employment, transfer, promotion, removal, qualifications and employment conditions of classified employees.
[4] Arguably, a city civil service commission may constitutionally adopt a rule which accords a reasonable preference in certification to residents of the city, but this is a vastly different consideration from requiring employees already selected for employment to reside in the city.
[5] La. Const. art. X, § 7 requires appointments and promotions to be made under a general system based on merit, efficiency, fitness and length of service, but allows each commission to adopt rules for certifying persons eligible for appointment, promotion, reemployment and reinstatement.
[6] While Ordinance 14,268 authorizes the removal of a public employee who violates the provisions, a commission's power to regulate removal deals more with fairness and procedural safeguards in the removal process and not with the question of whether a municipal governing authority may impose reasonable requirements upon its employees, the violation of which constitutes grounds for removal. The question whether this particular requirement is reasonable is an issue separate from the alleged violation of Section 10(A)(1).
[7] Plaintiffs argue that the ordinance 1) violates the equal protection and due process clauses of the Louisiana and United States Constitutions; 2) is in conflict with the definition of domicile in La.Civ.Code art. 28 and therefore violates La. Const. art. VI, § 5(E); 3) is an ex post facto law in violation of La. Const. art. I, § 23; and, 4) impairs the obligation of contracts under La. Const. art. I, § 23.