Dear Senator Heitmeier:
This office is in receipt of the request you made for an Opinion from the Attorney General concerning the eligibility of a particular member of the New Orleans Civil Service Commission ("Commission") to maintain his position on the Commission. In furtherance of your request, you generally described a potentially problematic situation concerning the member and his eligibility. You also identified relevant portions of both the Louisiana Constitution of 1974 and the Commission's governing Rules. Your concerns and the Attorney General's responses to those concerns are presented as follows:
1. DOES THE LOUISIANA CONSTITUTION OF 1974 PRECLUDE THE PERSON HOLDINGTHE POSITION DESIGNATED FOR A CLASSIFIED EMPLOYEE FOR THE CITY OF NEWORLEANS ON THE NEW ORLEANS CIVIL SERVICE COMMISSION FROM CONTINUING TOSERVE WHEN HE OR SHE IS NO LONGER A CURRENT CLASSIFIED CIVIL SERVICEEMPLOYEE OF THE CITY OF NEW ORLEANS.
This Department is of the opinion that the Louisiana Constitution of 1974 does not preclude the person holding the position designated for a classified employee for the City of New Orleans on the New Orleans Civil Service Commission from continuing to serve when he or she is no longer a current classified civil service employee of the City of New Orleans, subject to the distinctions identified herein. The Constitution pertinently provides: *Page 2 
 (A) Creation; Membership; Domicile. A city civil service commission shall exist in each city having a population exceeding four hundred thousand. The domicile of each commission shall be in the city it serves. Each commission shall be composed of five members, who are electors of the city, three of whom shall constitute a quorum. The members shall serve overlapping terms of six years as hereinafter provided.
 (B) New Orleans; Nomination and Appointment. In New Orleans, the presidents of Dillard University, Loyola University, Tulane University, and Xavier University, after giving consideration to representation of all groups, each shall nominate three persons. In addition, the employees in the classified service of the city of New Orleans shall nominate three persons in the classified service of the city of New Orleans by means of an election called for that purpose. The municipal governing authority shall appoint one member of the commission from the three persons nominated by each nominating authority.[1]
Accordingly, the employees in the classified service of the city of New Orleans are constitutionally-cast with the responsibility of nominating three (3) persons in the classified service of the city of New Orleans to serve on the Commission by means of an election called for that purpose. Of those three (3) persons, one (1) is appointed by the municipality's governing authority to serve on the Commission.
The Constitution goes on to delineate the rules and powers with which each commission (including the Commission) is vested:
(A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.[2] *Page 3 
So the Commission is vested with broad and general rulemaking power for the administration and regulation of the classified service. In light of the aforementioned, the Commission promulgated the following Rule:
 12.10 The employee member appointed by the City Council shall serve a six (6) year term which may be completed even if, during the course of the term, the employee retires from City employment. In the event of the death, resignation or dismissal of the employee member of the Commission, a nominating election shall be called within sixty (60) calendar days to fill a new six (6) year terms.[3]
Consequently, Rule 12.10 of the New Orleans Civil Service Commission (promulgated under the authority vested by La.Const. art. X, § 10(A)(1)) permits the employee member appointed by the City Council to serve a six (6) year term which may be completed even if, during the course of the term, the employee retires from City employment.
In your request, after identifying the areas of interest specifically identified by La.Const. art. X, § 10(A)(1), you surmised, ". . .there is no authorization to alter the qualifications of any member of the commission." Through the inclusion of this statement, we reasonably infer you are skeptical as to whether or not the Commission has the (constitutional) authority to promulgate Rule 12.10. We reach a different conclusion based upon our interpretation of the following. In 1991, the Louisiana Supreme Court issued a seminal opinion on this issue. In NewOrleans Firefighters Association Local 632, AFL-CIO v. City of NewOrleans, et al. ("Firefighters II"), Justice Lemmon opined:
 Thus, a city civil service commission has the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1), and the city governing authority cannot constitutionally infringe on the commission's exercise of this power.
 Moreover, the convention debates surrounding the adoption of Section 10(A)(1) indicated an intent that this provision should be construed liberally in favor of fulfilling the goals of civil service. New Orleans Firefighters Association of Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La. 1982). However, in areas of power affecting public employees which are not enumerated in Section 10(A)(1), a commission's powers should not be expanded *Page 4 
beyond those necessary to effectuate the objectives and purposes of the civil service.[4]
Justice Lemmon acknowledged a city civil service commission's exclusive authority to adopt rules regulating the classified service in the areas specifically identified in La.Const. art. X, § 10(A)(1). He further recognized a commission's rulemaking authority, relative to those areas specifically identified in La.Const. art. X, § 10(A)(1)), should be liberally construed in favor of fulfilling the goals of civil service. He then acknowledged a distinction between those areas specifically identified in La.Const. art. X, § 10(A)(1) and those not specifically identified in La.Const. art. X, § 10(A)(1). Relative to the latter, Justice Lemmon opined a commission's powers are limited to those necessary to effectuate the objectives and purposes of the civil service. So the question then begs is Rule 12.10 necessary to effectuate the objectives and purposes of the civil service?
Twelve (12) years after Justice Lemmon issued his opinion in NewOrleans Firefighters Association Local 632, AFL-CIO v. City of NewOrleans, et al. ("Firefighters II"), the Supreme Court again analyzed a city civil service commission's ability to promulgate rules in light of La.Const. art. X, § 10(A)(1). Justice Victory opined:
 This Court has developed a two-part test for determining whether rules enacted by the Commission are within the Commission's constitutional authority:
 In evaluating the constitutionality of Commission rules, this Court has adopted the two-part analysis developed in [Firefighters II and [Firefighters III, and reaffirmed by this Court in Police Ass'n of New Orleans v. City of New Orleans, 94-1078 (La. 1/17/95), 649 So.2d 951, 959. In the Firefighters II
case, we described the authority granted to state and city commissioners under Article X, Section 10(A)(1) as the "exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1)." [Firefighters II], 590 So.2d at 1176 (emphasis added). Thus, our initial inquiry when evaluating the Commission's authority to enact a rule is whether the rule in question falls within an area specifically enumerated in Article X, Section 10(A)(1).
 "However, in areas of power affecting public employees which are not enumerated in Section 10(A)(1), a commission's powers should not be expanded beyond those necessary to effectuate the objectives and purposes of the civil service." [Firefighters II], 590 So.2d at 1176 (citing [Firefighters I], 422 So.2d at 411) (emphasis added. "Thus, if the Commission had adopted a rule in an area not specifically enumerated in Section 10(A)(1), a court must *Page 5 
ask whether it is necessary for the commission to have the power to enact the rules in question to effectuate the objectives and purposes of the civil service. Id.[5]
So we must conduct the two-part test recognized by Justice Victory in order to determine whether Rule 12.10 Is necessary to effectuate the objectives and purposes of the civil service or whether it improperly expands the Commission's powers beyond those necessary to effectuate the objectives and purposes of the civil service.
Our initial inquiry when evaluating the Commission's authority to enact a rule is whether the rule in question falls within an area specifically enumerated in La.Const. art. X, § 10(A)(1). We do not believe Rule 12.10 falls within an area specifically enumerated in La.Const. art. X, § 10(A)(1).[6] As such, we must ask whether Rule 12.10 is necessary for the Commission to effectuate the objectives and purposes of the civil service. We believe Rule 12.10 is necessary to effectuate the objectives and purposes of the civil service.
We are of this opinion because Rule 12.10 addresses and makes provisions for legitimate contingencies (i.e., the retirement, death, resignation, or dismissal of a city employee serving on the Commission). It accordingly effectuates the inherent objectives and purposes of the civil service and the Commission's ability to administer and regulate the classified service system.
We would also note that Rule 12.10 makes a distinction between a classified city employee who retires while serving on the Commission and one who dies, resigns, or is dismissed. We suggest this is a critical distinction. As this Department has previously held, the term "employee" includes retirees or former employees now retired.[7] To that end, while the commission member in question is no longer an active classified employee of the City of New Orleans, it would appear he or she is still considered to be an "employee", albeit a retired one. *Page 6 
2. DOES RULE 12.10 OF THE NEW ORLEANS CIVIL SERVICE COMMISSIONSUPERSEDE THE GERMANE PROVISIONS OF THE LOUISIANA CONSTITUTION OF1974?
Rule 12.10 of the New Orleans Civil Service Commission does not supersede the germane provisions of the Louisiana Constitution of 1974;[8] nor does it conflict with the germane provisions of the Louisiana Constitution of 1974. The Rule and the germane provisions are symbiotic in that they co-exist without being mutually exclusive. For a more detailed analysis of the relationship between Rule 12.10 and the germane provisions of the Louisiana Constitution of 1974, we respectfully refer you to our response to your primary inquiry,supra.
 3. IF THE ANSWER TO 1 AND 2 ABOVE ARE NO, CAN THE COMMISSION MEMBER BEFORCED TO RESIGN. OR CAN THE POSITION BE DECLARED VACANT?
It is the opinion of this office that the commission member in question cannot be forced to resign from his position on the New Orleans Civil Service Commission under the facts presented by you (i.e., retirement from active employment with the City of New Orleans does not preclude seeing out the term of office). Nor can the position, under the facts presented, be declared vacant.
If we may be of further assistance, please do not hesitate to contact the undersigned.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 DAVID A YOUNG
 Assistant Attorney general
 JDC: DAY
[1] La.Const. art. X, § 4(A) and (B).
[2] La.Const. art. X, § 10(A)(1).
[3] New Orleans Civil Service Commission Rule 12.10.
[4] New Orleans Firefighters Association Local 632, AFL-CIO v. City ofNew Orleans, et al., 590 So.2d 1172, 1175-76 (La. 1991).
[5] Civil Service Commission of the City of New Orleans v. the City ofNew Orleans, 02-1812 (La. 9/9/03); 854 So.2d 322, 330.
[6] See La.Const. art. X, § 10(A)(1).
[7] Op. La. Att'y Gen. 90-131.
[8] Local, municipal rules cannot supersede or be inconsistent with the Louisiana Constitution of 1974. See generally la. Const. art. VI.